IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS,

FRANCISCO C. HERNANDEZ, JR.,

                Plaintiff,

      Vs.                                    No. 13-2596-SAC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.


MEMORANDUM AND ORDER

        This is an action reviewing the final decision of the defendant Commissioner of Social Security ("Commissioner") that denied the claimant Francisco C. Hernandez, Jr.'s ("Hernandez") Title II application for disability insurance benefits and Title XVI application for supplemental security income under the Social Security Act ("Act"). He filed his applications in 2008 and 2007 respectively, and on January 28, 2010, the administrative law judge ("ALJ") found Hernandez was not disabled. (Tr. 20). Hernandez appealed this matter, and on the Commissioner's motion, this court filed an agreed order on January 16, 2013, that remanded the case for further proceedings. The order directed the Appeals Council to forward the case to an ALJ who would provide the plaintiff with a new hearing, obtain more evidence, evaluate the severity of the plaintiff's impairments, address the opinions of record stating the weight given them and reasons for such weight, and consider "the credibility of Plaintiff's subjective complaints; evaluate Plaintiff's residual functional capacity; and

address third party reports in the record." (Tr. 479-80).

The case was assigned to a new ALJ who obtained additional evidence and conducted a new video hearing. The ALJ filed his 14-page decision on July 23, 2013, finding that Hernandez was not under a disability from the alleged onset date of March 15, 2002, through the date of his decision. (Tr. 424-437). With the Appeals Council's denial of the claimant's request for review, the ALJ's 2013 decision stands as the Commissioner's final decision. The administrative record (Dk. 9) and the parties' briefs are on file pursuant to D. Kan. Rule 83.7.1 (Dks. 10, 15 and 16), the case is ripe for review and decision.

Born in 1966 and having past employment as a warehouse worker, groundskeeper and truck washer, Hernandez alleges a disability onset date of March 15, 2002, based on a number of conditions including, cervical spine disc disease, vertigo, sleep apnea, hypertension, morbid obesity, chronic obstructive pulmonary disease, osteoarthritis and daytime somnolence. Hernandez appeals the Commissioner's decision denying benefits. He argues the ALJ failed to identify the weight given all the medical opinions of record, made an RFC decision that is not supported by substantial evidence, and failed to account for the plaintiff's limited RFC in finding him capable to perform the jobs of document preparer and addresser.

## STANDARD OF REVIEW

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that the Commissioner's finding "as to any fact, if supported by substantial evidence, shall be conclusive." The court also reviews "whether the correct legal standards were applied." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Persales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The review for substantial evidence "must be based upon the record taken as a whole" while keeping in mind "evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks and citations omitted). In its review of "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, . . . [the court] will not reweigh the evidence or substitute . . . [its] judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks and citation omitted).

The court's duty to assess whether substantial evidence exists: "is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but

mere conclusion.'" *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)). At the same time, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d at 1084 (internal quotation marks and citation omitted). The court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been made." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted).

By statute, a disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A).

A five-step sequential process is used in evaluating a claim of disability. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The first step entails determining whether the "claimant is presently engaged in substantial gainful

activity." *Wall v. Astrue*, 561 F.3d at 1052 (internal quotation marks and citation omitted). The second step requires the claimant to show he suffers from a "severe impairment," that is, any "impairment or combination of impairments which limits [the claimant's] physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (internal quotation marks and regulatory citations omitted). At step three, the claimant is to show his impairment is equivalent in severity to a listed impairment. *Lax*, 489 F.3d at 1084. "If a claimant cannot meet a listing at step three, he continues to step four, which requires the claimant to show that the impairment or combination of impairments prevents him from performing his past work." *Id.* Should the claimant meet his burden at step four, the Commissioner then assumes the burden at step five of showing "that the claimant retains sufficient RFC [residual functional capacity] to perform work in the national economy" considering the claimant's age, education, and work experience. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (internal quotation marks and citation omitted). Substantial evidence must support the Commissioner's showing at step five. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

**ALJ'S DECISION**

At step one, the ALJ found Hernandez to have not engaged in substantial gainful activity since March 15, 2002. At step two, the ALJ found

Hernandez to have the following severe impairments:   "mild degenerative disc disease of the cervical spine; sleep apnea; morbid obesity; chronic obstructive pulmonary disease; and hypertension." (Dk. 427). At step three, the ALJ found that Hernandez's impairments, individually or in combination, did not equal the severity of the Listing of Impairments. (Tr. 427-28).

Before moving to steps four and five, the ALJ determined that Hernandez had the residual functional capacity ("RFC") to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). He can push and pull bilaterally, can stand/walk for up to four hours in an eight-hour workday, and can sit for up to four hours in an eight-hour workday. However, he must be able sit/stand at will and change or adjust position and can only occasionally walk on uneven surfaces. He can occasionally climb ramps and stairs, can never climb ladders, ropes, or scaffolds, and can occasionally balance, stoop, crouch, kneel, crawl, bend, and squat. Finally, he must avoid concentrated exposure to atmospheric contaminants and vibrations and must never work at unprotected heights or in the presence of hazardous machinery.

(Tr. 428). At step four, the ALJ found that Hernandez was unable to perform his past relevant work, all of which had been medium unskilled work. (Tr. 435). The ALJ next determined that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 436). Based on all of the above findings and conclusions, the ALJ entered his order deciding that Hernandez has not been under a disability from the date of application filings through the date of his decision. (Tr. 437). It is from this order that Hernandez appeals.

6

## FAILURE TO IDENTIFY WEIGHT GIVEN TO CERTAIN MEDICAL OPINIONS

Hernandez argues the ALJ failed to address and to state the weight, if any, given to the following medical opinions of Dr. Gosalia, Dr. Siemsen, and Dr. Henderson. The ALJ's duties include evaluating all medical opinions in the record, assigning weight to each opinion, and discussing the weight given to each. *See* 20 C.F.R. §§ 416.927(c), 416.927(e)(2)(ii); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). This is a "well-known and overarching requirement." *Martinez v. Astrue*, 422 Fed. 719, 724 (10th Cir. Apr. 26, 2011). "It is clear legal error to ignore a medical opinion." *Lopez v. Astrue*, 2012 WL 1934056 at "4 (D. Kan. May 29, 2012)(citing *Victory v. Barnhart*, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005)(citing in turn SSR 96-5P, 1996 WL 374183, at *1)). The Tenth Circuit has explained this rule's operation in these terms:

> "It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions," including the opinions of state agency medical consultants. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citations omitted). But the need for express analysis is weakened "[w]hen the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC." *Id*. at 1162. And an ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity. *See id*. at 1162–63. In that case, the claimant is not prejudiced "because giving greater weight to [the opinion] would not have helped her." *Id*. at 1163.

*Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014).

Hernandez argues the ALJ failed to consider Dr. Siemsen's opinion "that he could only stand and/or walk 2 hours in an 8 hour workday" and failed to resolve this conflict with the RFC. (Dk. 10, p. 36). The record does not sustain his argument. Dr. Siemsen's opinion affirms the RFC assessment written for Hernandez in June of 2008. (Tr. 329). The ALJ did identify and discuss this same June 2008 RFC assessment, affording it "some weight to the extent" it was "consistent with the preponderance of the evidentiary record, but place[d] more weight on other opinions as indicated previously." (Tr. 435). Nor are there inherent inconsistencies between the June 2008 RFC assessment/Dr. Siemsen's opinon and the ALJ's RFC finding. On the stand/walk option, the assessment offered choices between "at least 2 hours" and "about 6 hours," so a finding of 4 hours would not necessarily be inconsistent with a response of "*at least* 2 hours." (Tr. 336) (italics added). Nor does the plaintiff show that even assuming additional limitations of 2 hours of standing/walking and no concentrated exposure to extreme cold and heat, this would preclude him from performing a range of sedentary work and the particular occupations listed by the vocational expert.

Hernandez next cites the medical source statement prepared by Dr. Henderson as part of a consultative examination report resulting from Hernandez's visit on December 15, 2012, to Central Medical Consultants in Shawnee, Kansas. (Dk. 9-3, p. 5); (Tr. 40F, 959, 963-968). The ALJ did

discuss Exhibit 40F identifying both the consultative physical evaluation and the medical source statement. (Tr. 432). The ALJ erroneously presumed that Dr. Rupp who performed the consultative evaluation (Tr. 959-962) to Exhibit 40F was also the physician who completed the medical source statement (Tr. 963-968) to Exhibit 40F. The ALJ assigned the following weight to the medical opinions found in Exhibit 40F:

> Although Dr. Rupp is not a treating physician, the undersigned gives his opinion great weight because it is based on and well supported by an objective physical examination that includes mechanical orthopedic measurements, including range of motion studies, gait, deep tendon reflexes, and motor and sensory studies, as well as clinical observations of the claimant's capacity to perform various orthopedic activities. Additionally, Dr. Rupp's findings and conclusions are generally consistent with and corroborated by the earlier consultative physical examinations conducted by Dr. Cedric Fortune as discussed below.

(Tr. 432). Though Dr. Henderson's written assessment was wrongly presumed to have been authored by Dr. Rupp, the ALJ did identify and weigh it. The plaintiff has not shown that Dr. Henderson's findings on overhead reaching, foot controls, stooping and crawling, and noise level which were not included in the RFC would preclude him from performing a range of sedentary work and the occupations listed by the vocational expert.

Hernandez's opening brief states that the opinion "of Dr. Gosalia (Tr. 306)" was not identified or weighed. (Dk. 10, p. 36). Dr. Gosalia's hand-written note at Tr. 306 is dated July 16, 2005, and mentions in part that Hernandez has a "chronic severe neck" condition and "vertigo" for which he is

"undergoing treatment" and should not participate in "any training process for at least 3 months." (Tr. 306, Ex. 4F). The medical record reflects that Dr. Sandra Edwards was a partner with Dr. Gosalia and that in March of 2007 Dr. Edwards took over being Hernandez's primary care physician for Dr. Gosalia. The ALJ identified and discussed Dr. Edwards' RFC questionnaire and medical source statements dated April 18, 2007, August 2, 2007, and August 5, 2007, all prepared less than six months after taking over for Dr. Gosalia. The ALJ assigned "some weight" to Dr. Edwards' opinion but found that it was "not supported by her treatment records, which contain little more than checked boxes and no evidence of mechanical measurements or clinical observations to justify her conclusions." (Tr. 434). To support this finding, the ALJ cited among the medical records those of Dr. Gosalia, including Exhibit 4F. *Id.* While Dr. Gosalia should have been identified by name and his treatment records mentioned, the court finds it sufficient that the ALJ did identify and discuss Dr. Gosalia's partner, Dr. Edwards, who took over Hernandez's care and who prepared the questionnaire and source statement, including the opinion that Hernandez "has been unable to work since 1/1/1998," by relying on Dr. Gosalia's records of his care and treatment of Hernandez. Under these circumstances, the court accepts the ALJ's discussion of Dr. Edwards as encompassing the medical records, treatment and opinions of her partner, Dr. Gosalia. The court finds no compelling grounds for reversing and remanding on

10

this argument.

**ALJ'S RFC FINDING IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**

Under this general heading, Hernandez advances a number of issues which will be taken up individually below. "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1). "Social Security Ruling 96-8P provides that '[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities.'" *Id.* at 956. "[I]n assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013). "RFC represents the most that an individual can do despite his or her limitations or restrictions." SSR 96-8P, 1996 WL 374184 at *4. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96–8p, 1996 WL 374184 at *7.

The claimant disputes the ALJ's conclusion that the evidence did

11

not show his anxiety "even minimally interfered" with his ability to perform daily living activities or handling work activities. (Dk. 10). Specifically, the Hernandez contends that the RFC fails to account for his mental impairments and that the ALJ's decision fails to provide a narrative discussion of the medical evidence on these impairments and fails to conduct a psychiatric review technique on mental functioning.

On Hernandez's allegation of an impairment from anxiety, the ALJ's decision included the following:

> As for anxiety attacks, the claimant underwent a psychological evaluation in March 2011, with a resulting diagnosis that ***considered*** adjustment disorder with anxiety features related neck issues and dizziness. (24F/4). Additionally, there is no evidence the claimant has ever sought treatment for mental health issues, and at the hearing, his representative confirmed that he had not been treated for symptoms of anxiety. Finally, there is no evidence that the claimant's alleged anxiety has even minimally interfered with his ability to perform activities of daily living or basic work activities. Accordingly, the undersigned finds no reason to further reduce the claimant's residual functional capacity.

(Tr. 431). Substantial evidence of record supports the ALJ's findings and decision on any mental impairment or limitations. As to Exhibit 24F, the consultative psychological evaluation report of Bruce Bean, Ph.D., the ALJ wrote this summary and evaluation:

> Dr. Bean posited adjustment disorder with anxiety features related to neck issues and dizziness as a possible diagnosis and estimated the claimant's level of functioning between 60 and 70 (24F/4). He also indicated the claimant's cognitive functioning was slightly below average and suggested he would do better with more simple types of tasks (24F/4). Although Dr. Bean was not a treating source, the undersigned nevertheless affords his opinion great weight to the extent it is

12

consistent with the preponderance of the evidence and the opinion of the reviewing state agency psychological consultant. (25F; 26F).

Dr. Bean wrote that Hernandez did "not demonstrate significant issues suggesting an Axis I type of diagnosis." (Tr. 810-11). Dr. Bean also noted Hernandez's repeated concern about becoming dizzy in a public setting, but he concluded, "[w]hile this might be suggestive of some type of mild anxiety disorder, my general impression is that this is more of a guarded preoccupation on his part related to concerns about dizziness." (Tr. 811). The ALJ's findings on the anxiety and the subsequent RFC are consistent with Dr. Bean's opinions and, therefore, are supported by substantial evidence.

In his visit with Dr. Bean, Hernandez did not identify any mental or psychiatric condition as disabling. (Tr. 808). At the hearing, the ALJ in preparing the hypothetical questions for the vocational expert asked Hernandez's counsel the following:

> ALJ: All right. Let me see here, all right, let me a hypothetical questions here to you. Let me – well let me ask Mr. Driskill, do you want to add anything about from the anxiety? There was some question about some mild anxiety with the gentleman or Mr. Hernandez. Is there anything further, any treatment, medications?
> ATTY:   No, there is not.
> ALJ:   Okay, all right. So are you saying that's not a severe impairment that he has?
> ATTY: Yes, that's correct.
> ALJ:   Okay, no severe impairment.

(Tr. 468). The ALJ certainly afforded counsel an opportunity to suggest mental limitations or to offer additional evidence or argument, and counsel did not

13

offer any and denied any severe mental limitation. "As such, an ALJ is generally entitled to 'rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored.'" *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004)). The court cannot fault the ALJ's reasonable judgment in not conducting a deeper inquiry into the plaintiff's mental functioning. *See Wall*, 561 F.3d at 1062.

Substantial evidence sustains the ALJ's finding that the Hernandez's anxiety does not "minimally interfere" with his daily living activities or basic work activities. The mental RFC assessment completed in March of 2011 reports that Hernandez did not include a mental impairment allegation in his prior application and that he currently has no significant limitations other than moderate limitations with detailed instructions. (tr. 828-830). This matches up with Dr. Bean's estimate of low average cognitive functioning for Hernandez. While the ALJ placed "great weight" on Dr. Bean's opinion and on the state agency psychological consultant, his decision does not expressly refer to this limitation with detailed instructions and incorporate the same into the RFC. Nonetheless, the record demonstrates that Hernandez had done unskilled work and that the ALJ only considered unskilled sedentary work in deciding whether other work existed. As for the mental problem boxes that Dr. Edwards checked in 2007, the ALJ found no support for them in the clinical

14

observations made in the physician's treating records. (Tr. 434). The ALJ properly may give little weight to a conclusory form that lacks any functional findings or narrative to support it. *See Chapo v. Astrue*, 682 F.3d 1285, 1289 (10th Cir. 2012). Furthermore, the court fails to see evidence of a mental impairment that allegedly prevented Hernandez from performing unskilled sedentary work such that the court should remand the case for this procedure on evaluating mental impairments to be completed. Dr. Adams completed a psychiatric review technique showing that Hernandez "would do better with more simple types of tasks" and was "limited from complex work." (Tr. 826). Given the medical evidence of record on the alleged mental impairment, the court is confident in saying any argued errors here are harmless in that no reasonable administrative factfinder following all of the required procedures would have resolved these factual matters differently. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

Hernandez next argues error in the ALJ's decision to give some weight to the opinions of single decision makers ("SDM"). His analysis goes no farther than to cite the general rule that, "[a]n SDM is not a medical professional of any stripe, and the opinion of an SDM is entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources." *Cunningham v. Astrue*, 2010 WL 4737795 at *4 (D. Kan. Nov. 16, 2010) (citation omitted); *see Lopez v. Astrue*, 805 F. Supp. 2d 1081, 1092 (D.

Colo. 2011). "[E]ven though the opinion of a SDM is worthy of no weight as a medical opinion, a medical consultant might adopt the SDM opinion as his own, and the resulting medical opinion is then properly evaluated to determine whether it might be accorded particular weight in the Commissioner's decision." *Gerard v. Colvin*, 2014 WL 2095169 at 4 (D. Kan. May 20, 2014) (citing *Thongleuth v. Astrue*, No. 10–1101–JWL, 2011 WL 1303374, at *11– *12 (D. Kan. Apr. 4, 2011)); *see Pelzer v. Colvin*, 2014 WL 1875163 at *3–*4 (D. Kan. May 9, 2014) (ALJ did not err in relying on an "opinion affirmed by an acceptable medical source" after reviewing the case in its entirety). As in *Pelzer*, the RFC assessments here done by the SDMs included narrative discussions of the evidence in support of the findings all of which were affirmed by acceptable medical sources, either Dr. Siemsen or Dr. Arjunan. (Tr. 335-342, 329, 836-843, 913). The ALJ's decision properly reflects he considered the RFC assessments in conjunction with the medical opinions that affirmed them. (Tr. 435). The court does not find error in the ALJ's mere citation of the SDM's assessments alone and along with the opinions of acceptable medical sources which affirmed those assessments as being afforded "some" weight.

Hernandez repeats his arguments on the ALJ's failure to discuss specifically those portions of certain medical opinions concerning his ability to handle detailed instructions, his need to avoid concentrated exposure to

extreme heat or cold, to maintain concentration, persistence or pace. Absent

from the plaintiff's briefing is how such limitations would interfere with

performing the unskilled sedentary work identified by the ALJ. The plaintiff's

arguments are not persuasive in showing a need to reverse and remand. The

ALJ's discussion of the extensive and expansive medical record here is

articulate and adequate for meaningful review. As demonstrated in the ALJ's

detailed decision, the court is confident that all of the relevant evidence was

considered and that his critical findings are linked to specific evidence. The

ALJ's decision here is not a vague and conclusory discussion that fails to

correspond with the evidence. Nor is this an instance where the ALJ selectively

excerpted from the medical evidence only those portions favorable to his

conclusions. The court believes it can adequately assess whether relevant

evidence supports the ALJ's RFC determination, and its conclusion is that it

does. The court believes this case falls within the Tenth Circuit's

common-sense parameter on judicial review:

> Where, as here, we can follow the adjudicator's reasoning in conducting
> our review, and can determine that correct legal standards have been
> applied, merely technical omissions in the ALJ's reasoning do not dictate
> reversal. In conducting our review, we should, indeed must, exercise
> common sense. The more comprehensive the ALJ's explanation, the
> easier our task; but we cannot insist on technical perfection.

*Keyes–Zachary v. Astrue*, 695 F.3d at 1166; *see Hendron*, 767 F.3d at 957.

The ALJ's reasoning and evaluation of the alleged mental impairment is easily

followed and supported by substantial evidence.

17

Hernandez next complains that the ALJ's determination of the RFC is not supported by the whole record in that he failed to give adequate weight to seven statements from third parties. With regard to opinion testimony or statements from lay witnesses such as spouses, parents, friends, and neighbors, the ALJ's decision must reflect that the opinion was considered, "but he need not specify the weight accorded to that opinion. Nonetheless, he may do so in explaining the rationale for his decision." *Cortes v. Colvin*, 2014 WL 1643493 (D. Kan. 2014) (citations omitted). Social Security Ruling 06–03p (SSR 06–03p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from non-medical sources who have not seen the claimant in a professional capacity. See Soc. Sec. Rul. 06–03p, 2006 WL 2329939 (Aug. 9, 2006). SSR 06–03p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) nature and extent of the relationship; (ii) whether the evidence is consistent with other evidence; and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06–03p, 2006 WL 2329939, at *5–*6. "Proper reasons" for assigning little weight to such opinions can include that they are "based on casual observation and friendship." *Jackson v. Colvin*, 2013 WL 6440265 at *6 (D. Kan. Dec. 9, 2013). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such

18

determinations when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks and citation omitted).

> On the seven third party statements at issue here, the ALJ found:

> The undersigned has considered the Third Party Function Reports and Daily Activities Questionnaires prepared by Alberta Hernandez, Tracy Camargo, Steven Hernandez, Angelita Jackson, Dawn Roland, Julie Blain, and Brea Roark (10E: 15E; 21E; 27E; 22E; 23E). However, by virtue of their relationship to the claimant, they cannot be considered disinterested third parties whose statements would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to these statements because they, like the claimant's, are simply not consistent with the preponderance of the medical record. Thus, the undersigned affords these statements little weight.

(Tr. 434-35). The ALJ's decision cites the third party statements and confirms that the ALJ considered them and weighed the relevant factors in concluding they were entitled to "little weight." *Id*. Mother, sister-in-law, girlfriend, and long-time friend are among the relationships existing between these third parties and Hernandez. The inconsistency between the casual observations of these third party statements and the medical evidence is a conclusion sustained by the administrative record. That the ALJ's finding could be applied in other cases does not show its application here to be erroneous. The plaintiff has not shown that the law requires anything more in the ALJ's decision

> Hernandez is next critical of the ALJ's finding of "little weight" given to the opinion of Dr. Brennan, who is a chiropractor. Hernandez argues

the ALJ's evaluation is contrary to SSR 06-3p in concluding that Dr. Brennan's

opinion is necessarily given less weight than an opinion from an acceptable

medical source. The ALJ's decision identifies and summarizes the

questionnaires and medical source statements prepared by Dr. Brennan, and it

then articulates the following credibility finding:

> Although Dr. Brennan has a significant treating relationship with the claimant, he is not an acceptable medical source as defined by the regulations, and therefore does not merit as much weight as qualified medical sources. However, even if Dr. Brennan were an acceptable medical source, the undersigned would nevertheless accord his opinion little weight. Specifically, Dr. Brennan's findings and conclusions are not based on objective medical imaging or laboratory testing, conflict with the preponderance of the evidence—particularly the consultative physical examinations discussed previously—and his opinion as to the claimant's functional capacity tends to be conclusory, exaggerated, and reflective of the claimant's subjective statements of his limitations. More specifically, Dr. Brennan's medical source statements indicate he has treated the claimant for multiple complaints, including neck pain, shoulder pain, and numbness in his arms (30F/2-3; 21F; 3F/4, 9, 15; 14F/6). However, his records do not contain x-rays of the claimant's cervical spine and shoulder and there are no neurological consults or nerve conduction studies to confirm neuropathy. More importantly, Dr. Brennan's records do not contain mechanical measurements of the claimant's range of motion, motor strength, sensation, and reflexes—among others—to quantify the extent and severity of his limitations, and do not contain practical observations of the claimant's ability to perform basic functional activities such as walking, bending, sitting down, arising from a sitting position, and grasping and handling objects. Absent this supporting evidence, the undersigned finds Dr. Brennan's opinion of the claimant's functional capacity to be relatively baseless. Finally, the undersigned finds that yearly source statements and functional capacity assessments do not—by virtue of repetition—establish continuity and progression of the claimant's impairments and limitations because they are not supported by the evidence.

The undersigned has considered the Listing Evaluation—Listing Number

1.02 completed by Curt Brennan, D.C., on September 20, 2012 and December 14, 2010 respectively (37F; 30F/9-10). Dr. Brennan opined the claimant met listing 1.02 based on involvement of one major peripheral weight bearing joint and involvement of one major peripheral joint in each upper extremity (37F/1; 30F/9). As discussed previously, Dr. Brennan's treatment records indicate he has treated the claimant primarily for neck pain, with occasional treatment for shoulder pain. Although the record contains objective medical evidence to confirm degenerative disc disease in the claimant's cervical spine, there is no objective evidence to support a similar finding for any of the claimant's joints—including his shoulders—that is consistent with listing 1.02 concerning major dysfunction of a joint. More importantly, there is no evidence—as discussed previously—that the claimant is unable to ambulate effectively due to dysfunction in his hips, knees, or ankles and no evidence that he is unable to perform fine and gross movements due to dysfunction in his shoulder, elbow, wrist, or hand. Furthermore, in completing the listing evaluations, Dr. Brennan merely checked the blocks in a preprinted form and did not provide any written explanation, support, or justification for why he did so.

(Tr. 433-34).

Hernandez's argument appears aimed at the opening sentence quoted above, "Although Dr. Brennan has a significant treating relationship with the claimant, he is not an acceptable medical source as defined by the regulations, and therefore does not merit as much weight as qualified medical sources." (Tr. 433). The court reads this opening sentence as simply restating the general rule found in SSR 06-03P, "only 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight. See 20 CFR 404.1527(d) and 416.927(d)." 2006 WL 2329939 at *2. Thus, Dr. Brennan's opinion does not receive the same weight as an opinion from a treating

acceptable medical source. While SSR 06-03P recognizes the possibility that

an opinion from a non-medical source may outweigh an opinion from a medical

source, the policy interpretation ruling specifies this possibility depends on the

non-medical source's opinion having "better supporting evidence" and being

"more consistent with the evidence as a whole." 2006 WL 2329939 at *6. The

ALJ's decision addresses how Dr. Brennan's opinion is deficient in these

respects. The record does not reflect that the ALJ applied incorrect legal

standards in evaluating Dr. Brennan's assessment and medical source

statements.

Hernandez next argues the ALJ wrongly gave more weight to the

opinions of the examining physicians than to opinions of the treating

physicians, Dr. Edwards and Dr. Lee. A "treating physician's opinion is given

particular weight because of his unique perspective to the medical evidence."

*Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). A treating physician's

opinion, however, is not entitled to controlling weight "'if it is not

well-supported by medically acceptable clinical and laboratory techniques or if

it is inconsistent with the other substantial evidence in the case record.'"

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR

96-2p, 1996 WL 374188, at *2). A decision or finding that does not give the

treating physician's opinion controlling weight, as here, does not mean that the

physician's opinion was "rejected." *Id.* (quoting SSR 96-2p, 1996 WL 374188,

at *4). Instead, a treating physician's opinion is "still entitled to deference and subject to weighing under the relevant factors." *Mays v. Colvin*, 739 F.3d 569, 574 (10th Cir. 2014) (citing 20 C.F.R. § 404.1527). These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). An ALJ is not required to discuss each of these factors, but the decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham v. Asture*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks and citations omitted). Nothing more is required than for the ALJ to provide "good reasons in his decision for the weight he gave to the treating sources' opinions." *Id*.

On Dr. Edwards, the ALJ found:

> The undersigned accords Dr. Edwards' opinion some weight to the extent it is consistent with preponderance of the evidence. However, as with Dr. Lee's opinion, Dr. Edwards' opinion—although based on a treating relationship with the claimant—is not supported by her treatment records, which contain little more than checked boxes and no evidence of mechanical measurements or clinical observations to justify her conclusions (23F; 22F; 19F; 2F; 4F; 15F).

(Tr. 434). Hernandez argues the ALJ has not given good reasons for the weight

23

ascribed to Dr. Edwards' opinions. He cites Dr. Edwards' listing of objective findings and clinical observations on the August 2007 form. His argument, however, does not dispute the ALJ's findings that Dr. Edwards' conclusions are not supported by her other treatment records which the ALJ cited. Moreover, what Dr. Edwards did list as objective findings and clinical observations were no more than conclusions instead of measurements and specific clinical observations. The ALJ's decision provides good reasons for the limited weight given Dr. Edwards' opinion.

On Dr. Lee, the ALJ found:

> The undersigned has also considered the Physician's Residual Functional Capacity questionnaire prepared by Alanna Lee, M.D., on May 10, 2013 (41F). Dr. Lee indicated the claimant was capable of lifting and carrying up to ten pounds frequently, and could sit for up to two hours in an eight-hour workday and stand/walk for up to two hours (41F/1). The undersigned gives Dr. Lee's opinion some weight to the extent it is consistent with the preponderance of the evidence. Although Dr. Lee has treated the claimant for approximately two years, her treatment records contain a standard and very minimal "check the box" format for physical examinations that provide little support—in terms of mechanical measurements or clinical observations—for her assessment of the claimant's functional capacity (34F; 42F).

(Tr. 434). "[A] treating physician's report may be rejected if it is brief, conclusory and unsupported by medical evidence." *Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988). The treatment records of Dr. Lee match the ALJ's description as providing little support in terms of measurements or clinical observations to support the conclusions contained in the RFC questionnaire. The ALJ offered sufficiently specific reasons for discounting Dr. Lee's opinion

24

based on the preponderance of other medical evidence and the lack of supporting treatment records. The ALJ provided record citations in support of his findings.

**FAILURE TO CARRY BURDEN AT STEP FIVE**

At step five the ALJ has the burden to show there are other jobs a claimant can adjust to that exist in significant numbers in the national economy. *See Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998). At this step of the sequential process, an ALJ is required to consider whether, given a claimant's background and RFC, the claimant can perform other work that exists in significant numbers in the national economy. See 20 C.F.R. § 404.1520(g). In order for a vocational expert's ("VE's") response to a hypothetical question to constitute substantial evidence supporting an ALJ's disability determination, the question must "relate with precision all of [the] claimant's impairments." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.1991) (quotation omitted). When the ALJ's RFC findings are "adequately reflected in the ALJ's hypothetical inquiries to the vocational expert, the expert's testimony provide[s] a proper basis for adverse determination of this case." *See Gay v. Sullivan*, 986 F.2d 1336, 1340–41 (10th Cir.1993) (citation omitted).

Hernandez argues the ALJ wrongly relied on the VE's testimony that he could perform certain sedentary work which, according to Hernandez,

requires the ability to sit for six hours, but the ALJ's RFC finding was that he could sit for only four hours. Hernandez cites the rule that the ALJ cannot rely on evidence provided by a VE that makes assumptions contrary to regulatory policies. Hernandez further asserts the ALJ failed to elicit from the VE an explanation for the ostensible conflict between the expert's testimony and the DOT information identifying the positions of document preparer and addresser as sedentary work.

As quoted above, the ALJ's RFC finding was that Hernandez was limited to sedentary work with additional restrictions that, he "can sit for up to four hours in an eight-hour workday. However, he must be able to sit/stand at will and change or adjust position . . . ." (Tr. 428). By regulation, sedentary work is that which:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); *see* SSR 83–10, 1983 WL 31251 at *5 ("'Occasionally' means occurring from very little up to one-third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8–hour workday, and sitting should generally total approximately 6 hours of an 8–hour workday."). "Social Security Ruling 96–9p

further clarifies that '[s]itting would generally total about 6 hours of an 8–hour workday.'" *Hendron v. Colvin*, 767 F.3d 951, 956-57 (10th Cir. 2014) (citing SSR 96–9p, 1996 WL 374185, at *3). As suggested in the above use of "generally," these provisions do not rule out sedentary work for someone who cannot sit for a total of six hours:

> Claimant interprets Social Security Ruling 83-10 to require someone performing sedentary work to sit for a total of six hours a day. We disagree. SSR 83-10 states that some standing and walking is often necessary in sedentary work, but these activities generally total no more than two hours out of an eight-hour day; the worker may sit the remainder of the time. The ruling does not say that a worker who needs to stand more often cannot do so. The vocational expert testified that there are numbers of sedentary jobs claimant can perform that give her the option to sit or stand at will, and the ALJ relied on this testimony in determining claimant can perform other work in the national economy.

*Ritter v. Shalala*, 5 F.3d 547, 1993 WL 332306 at *2-*3 (10th Cir. 1993).

In asking the hypothetical question of the VE, the ALJ described an individual "limited to sedentary work with occasional push and pull bilaterally, standing and walking four out of eight, sitting four out of eight, would require a sit/stand option to change and adjust positions at will and this is because of his neck problem and his morbid obesity that's causing problems as well." (Tr. 468-469). The ALJ's question highlighted the sitting limitation and the need for an option to sit or stand at will. There is nothing to indicate that the VE's testimony did not consider these limitations or that any apparent or possible conflict or variance exists between the VE's testimony and the DOT job descriptions. Instead, the ALJ's decision confirms, "Pursuant to SSR 00-4p, the

undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (Tr. 437). Any arguable error here in not asking about the possibility of a conflict is harmless. The court finds no reversible error at step five.

IT IS THEREFORE ORDERED that the judgment be entered in accordance with sentence four of 42 U.S.C. § 405(g) affirming the Commissioner's decision.

Dated this 25th day of February, 2015, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge